**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

Karen Smith,                                             Case No. 1:11-cv-328

                Plaintiff,                               Judge Michael R. Barrett

        v.

Hon. Karla J. Grady, et al.,

                Defendants.

**ORDER**

        This matter is before the Court on Defendants' Motion to Dismiss.  (Doc. 21).
Plaintiff has filed a memorandum in opposition (Doc. 24), and Defendants have filed
their reply (Doc. 25).  This matter is now ripe for review.

**I.      BACKGROUND**

        On May 19, 2011, Plaintiff Karen Smith ("Plaintiff") filed a Complaint against
Hamilton County, Hamilton County Board of County Commissioners, and Hamilton
County Juvenile Court Youth Center.  (Doc. 1).  On November 4, 2011, Plaintiff filed an
Amended Complaint against the Honorable Karla J. Grady in her official capacity as
Administrative Law Judge for the Hamilton County Juvenile Court, Duane Bowman in
his official capacity as Superintendent of the Hamilton County Juvenile Court Youth
Center and Hamilton County, Ohio (collectively, "Defendants").  (Doc. 14).

        In her Amended Complaint, Plaintiff alleges that she is an African American
female over the age of 40 who was employed at the Hamilton County Juvenile Court
Youth's Center ("Youth Center") as a Security Officer from March 26, 2001 until her
termination on or about June 21, 2012. (Doc. 1, ¶¶ 13-15, 36).  As a Security Officer,

1

part of her job responsibilities included "physically intervening with residents of the Youth Center who were acting out." (Doc. 14, ¶ 16). After undergoing surgery on her knee, Plaintiff, upon her request, had her position changed to Lobby Reception and Security Officer where she was responsible for ensuring that the Lobby remained adequately supplied at all times. (Doc. 14, ¶ 14). Plaintiff alleges that she later took Family Medical Leave on various occasions to care for herself and her grandson. (Doc. 14, ¶¶ 23-24). After an incident in April 2010 regarding Plaintiff ordering toner, the then-Superintendent Harvey Reed placed Plaintiff on administrative leave. (Doc. 14, ¶ 34). She was terminated shortly thereafter allegedly as a result of the toner incident. (Doc. 14, ¶ 36).

Based on the above facts, among others, Plaintiff brings the following claims against Defendants in the Amended Complaint (Doc. 14):

- Count I: Interference and retaliation in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*

- Count II: Age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*

- Count III: Age discrimination in violation of Ohio Revised Code § 4112, *et seq.*

- Count IV: Disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*

- Count V: Disability discrimination in violation of Ohio Revised Code § 4112, *et seq.*

- Count VI: Race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.*

- Count VII: Race discrimination in violation of Ohio Revised Code § 4112, *et seq.*

On March 12, 2012, Defendants filed a motion seeking dismissal of Plaintiff's claims on multiple grounds. (Doc. 21). First, they seek dismissal of Hamilton County as a defendant on the bases that it is not *sui juris*, was not Plaintiff's employer, and was not properly served. (Doc. 21, pp. 3-5). Second, they seek dismissal of all claims brought under Ohio Rev. Code §§ 4112, *et seq.*, the self-care provision of the FMLA, the ADEA, and Title I of the ADA on the basis that they are barred by the Eleventh Amendment. (Doc. 21, pp. 5-9). Third, they seek dismissal of Plaintiff's Title VII claim pursuant to the "personal staff" exemption. (Doc. 21, pp. 9-10). Fourth and finally, they seek dismissal of Plaintiff's request for punitive and emotional distress damages. (Doc. 21, pp. 10-11).

## III.   ANALYSIS

### A.   Motion to Dismiss Standard

Defendants move for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exists." *DLX, Inc. v. Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004). Facial attacks question the sufficiency of the pleadings. *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994). In reviewing a motion on this basis, a court must take the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id*. On the other hand, a factual attack is "not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction[,]" and the court "is

free to weigh evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court must "'construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). "[T]o survive a motion to dismiss a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M&G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 129 S. Ct. 1937, 1949 (2009). Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556).

### B.  <u>Hamilton County as a Defendant</u>

Defendants make three arguments as to why Hamilton County should be dismissed as a Defendant, which are: (1) Hamilton County is not *sui juris*, or capable of suing or being sued; (2) Hamilton County is not a proper party defendant because Plaintiff has not alleged a sufficient economic link, and it is not Plaintiff's employer; and

4

(3) Hamilton County has not been properly served within the requisite timeframe. The Court addresses each of these issues below.

## 1. <u>Hamilton County's ability to be sued</u>

Defendants argue that Hamilton County should be dismissed as a Defendant because Hamilton County is not *sui juris*, and thus, lacks the capacity to sue or be sued. More specifically, Defendants rely on Section 301.22 of the Ohio Revised Code for the proposition that the only counties that can be sued directly are those that adopt a charter or alternative form of government, which Hamilton County has not done. Plaintiff disputes that contention, relying on Section 301.22 for the proposition that a county is a body politic and corporate and capable of suing and being sued. Plaintiff also relies on Section 2744.01(F) of the Ohio Revised Code relating to Political Subdivision Torts, which includes a "county" in the definition of a "political subdivision."

Although Defendants frame the issue as one of capacity, a close analysis of the statutory law and the relevant caselaw clarifies that the issue is one of immunity from suit rather than one of capacity to be sued. *See Turner v. City of Toledo*, 671 F. Supp. 2d 967, 971-973 (N.D. Ohio 2009) (citing *State ex. rel. Ranz v. City of Youngstown*, 140 Ohio St. 477, 483, 45 N.E.2d 767 (1942) and *Bd. of Comm'rs v. Mighels*, 7 Ohio St. 109, 118, 119 (1857)). Under Ohio law, a county is recognized as a "political subdivision" of the state. O.R.C. § 2744.01(F) (emphasis added); *see also* O.R.C. § 2743.01(B). *See also Zents v. Bd. of Comm'rs*, 9 Ohio St. 3d 204, 205, 459 N.E.2d 881, 885 (1984) ("In Ohio, a county is not regarded as a body corporate like a municipality but rather a political subdivision of the state."); *Schaffer v. Bd. of Trs.*, 171 Ohio St. 228, 230, 168 N.E.2d 547 (1960) (stating that a county is "not a body corporate but rather a

subordinate political subdivision," and "[a] county is purely a political subdivision, an agency or instrumentality of the state").  As a political subdivision, a county is provided certain rights and responsibilities, and it cannot sue or be sued except "as specially authorized by statute." *Stone v. Holzberger*, 807 F. Supp. 1325, 1333 (S.D. Ohio 1992), *aff'd*, 23 F.3d 408 (6th Cir. Jan. 6, 1994), (citing O.R.C. § 301.22 and *Pancake v. Wakefield*, 102 Ohio App. 5, 7 (Athens Cty. 1956)); *see also* Ohio Rev. Code § 2743.01 (defining "political subdivision" to include a "county" to which the sovereign immunity of the state attaches).

A waiver of a county's immunity from suit has been "specially authorized" in various provisions of the Ohio Revised Code.  Section 305.12 of the Ohio Revised Code sets forth one such instance where a slice of a county's immunity is waived.  O.R.C. § 305.12.  Pursuant to that provision, a board of county commissioners may sue or be sued in any court.  O.R.C. § 305.12.  While that provision does not state that the board of county commissioners is the exclusive avenue by which a county may be sued, it may be if no other applicable provision authorizes suit against the county.  *See* O.R.C. § 305.12.  A second example of where the immunity given to a county has been waived is set forth in Section 301.22.  O.R.C. § 301.22; *see also Stack v. Karnes*, 750 F. Supp. 2d 892, 894-95 (S.D. Ohio 2010) (recognizing Section 301.22 as providing a "waiver" of immunity); *Turner*, 671 F. Supp. 2d at 971 n.2 (same). Under that provision, the state legislature waived immunity for any county that adopts a charter or alternative form of government, granting such a county the powers and responsibilities of being a body that is both corporate and politic, including the power to sue or be sued.  O.R.C. § 301.22.  As such, a county that meets the criteria set forth in Section 301.22 may sue or be sued

without any further explicit statutory authorization. That provision makes no mention of those counties that have not adopted a charter or alternative form of government, and as such, the inference is that those counties remain subject to the general rule that a political subdivision cannot sue or be sued except as specially authorized by statute. *See Stone*, 807 F. Supp. at 1333 (citing O.R.C. § 301.22 and *Pancake*, 102 Ohio App. at 7).

Here, Plaintiff has not named the Hamilton County Board of County Commissioners as a defendant in the Amended Complaint.[1] Plaintiff also makes no allegations or arguments that Hamilton County has adopted a charter or alternative form of government, and this Court finds that Hamilton County has not done so. As such, neither Section 305.12 nor Section 301.22 is applicable. It accordingly is Defendants' position that Plaintiff cannot sue Hamilton County directly in federal court on any of her claims because it is not *sui juris*. This Court, however, finds that the analysis does not end there. Instead, it is necessary to consider (1) whether the county is immune from suit under Section 4112.01, *et seq.*, under which Plaintiff brings her state law claims; (2) whether the county is immune from suit on those state law claims in federal court; and (3) whether the county is immune from suit on federal law claims brought against it by Plaintiff in federal court.

The Court begins its analysis with the issue of immunity in relation to Section 4112.01, *et. seq.* Section 4112.02 makes it an "unlawful discriminatory practice" for

---

[1] While Plaintiff's original complaint named the Hamilton County Board of County Commissioners as a Defendant, her Amended Complaint does not. Plaintiff's Amended Complaint supersedes the original complaint and is the legally operative complaint that controls the case from this point forward. *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 306-07 (6th Cir. 2000), *cert. denied*, 533 U.S. 951, 121 S. Ct. 2594 (2001) (recognizing that the amended complaint was the legally operative complaint); *Schmauch v. Honda of America Mfg., Inc.*, 311 F. Supp. 2d 631, 633 (S.D. Ohio 2003) (amended complaint supersedes original complaint and controls the case). As such, any claims Plaintiff may have asserted in the original complaint against the Hamilton County Board of County Commissioners are not before the Court at this time.

"any employer because of the race, . . . disability, [or] age . . . to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."  O.R.C. § 4112.02.  An "employer" is defined to include "any political subdivision of the state" and "any person acting directly or indirectly in the interest of the employer."  O.R.C. § 4112.01(A)(2).  The definition of "Person" includes "all political subdivisions."  O.R.C. § 4112.01(A)(1).  In other words, a political subdivision in this sense is not just a political entity; it also has a separate identity as an "employer" and a "person."  Unlike in other provisions of the Ohio Revised Code, the plain language of Section 4112.01, *et. seq.* makes no exceptions for, and does not distinguish between, different types of political subdivisions or the representative bodies thereof to which the law is to apply.  *Compare* O.R.C. § 4112.01(A)(1)-(2) (employer includes "all" and "any" political subdivisions) *with* O.R.C. §§ 903, 904 (excluding "county" from the definition of "political subdivision" and defining it instead as "any body corporate and politic," noting however that a county that adopted a charter was not included within that definition); O.R.C. §§ 9.82, 9.835 (excluding from the definition of political subdivision "any body corporate and politic that operates in and is responsible for a geographic area smaller than the state"); O.R.C. § 9.65 (excluding "county" from the definition of "political subdivision"); O.R.C. §§ 5709.831, 5713.081 (listing the particular political subdivisions to which the provisions apply).

A related provision is Section 2744.01, *et seq.* on Political Subdivision Tort Liability.  In that provision, the legislature statutorily granted political subdivisions immunity from any damage to persons or property allegedly caused by any act or

omission of the subdivision or its employee in connection with a governmental or proprietary function, but it chose to expressly exempt from that immunity claims for "Civil actions by an employee . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision" and "Civil actions by an employee of a political subdivision relative to wages, hours, conditions, or other terms of his employment." O.R.C. § 2744.09. Those exemptions have been interpreted to apply to employment discrimination claims brought under Section 4112.02. *Kohler v. City of Wapakoneta*, 381 F. Supp. 2d 692, 705 (N.D. Ohio 2005) (O.R.C. Ch. 2744 immunity did not apply to the employee's allegations of sexual harassment under O.R.C. 4112.02 against the city, former police chief, mayor, and safety director because her allegations related to the conditions of her employment and therefore were exempt from municipal immunity under O.R.C. 2744.09(C)); *City of Whitehall ex rel. v. Ohio Civil Rights Comm'n*, 74 Ohio St. 3d 120, 656 N.E.2d 684, 687 (1995) (holding that political subdivision immunity was inapplicable under Sections 2744.09(B)-(C) where the claimant alleged racial and sexual discrimination). This statutory provision appears to authorize lawsuits against political subdivisions, including counties, without the need to rely on Sections 305.12 and 301.22.

Having considered the foregoing, the Court finds that it is plausible that Hamilton County can be sued directly as an "employer" and/or "person" under Section 4112.01, *et seq.* of the Ohio Revised Code. However, the Court does not conclusively resolve that issue here given that neither party has raised that specific issue of immunity in their briefings. That lack of resolution on the issue means that the state law claims brought under Section 4112.01, *et seq.* against Hamilton County remain pending.

Given that the state law claims against Hamilton County remain pending, the next issue raised by Defendants' argument as to its ability to be sued is whether Hamilton County may be sued on those state law claims in federal court.  To make that determination, the Court must consider whether Hamilton County is entitled to sovereign immunity under the Eleventh Amendment.  As the Court will explain in more detail below with respect to the federal law claims, Hamilton County is not entitled to sovereign immunity under the Eleventh Amendment, and therefore, it may be sued on the state law claims in federal court.

The Court now will address Hamilton County's amenability to suit in federal court on Plaintiff's federal law claims.  To start, the Court will examine the specific language of the federal statutes under which Plaintiff brings her claims -- the ADA, Title VII, ADEA and FMLA.  Each of those statutes define "employer" in a similar way.  Specifically, under the ADA, a "covered entity" is prohibited from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a). "Covered entity" is defined to include "employers" which term encompasses "governments" and "political subdivisions."  42 U.S.C. § 12111(2), (5), (7); 42 U.S.C. 2000e.  Likewise, employers subject to Title VII include "governments" and "political subdivisions," and employers subject to the ADEA include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State."  42 U.S.C. §§ 2000e, 2000e-2; 29 U.S.C. § 630(b).   The FMLA sets forth similar definitions, providing that an "employer" who may be civilly liable

includes "any 'public agency[,]'" which is defined to include the government of a State or a political subdivision thereof, a State, or a political subdivision of a State. 29 U.S.C. §§ 203(x) (defining "public agency"), 2611(4) (defining "employer"), 2617 (providing for civil enforcement of FMLA). Therefore, on their face, the statutes subject a "political subdivision," such as a county, to suit.

However, an interrelated question is how a county's ability to sue or be sued directly under Ohio law affects its amenability to suit in federal court under federal laws. Recent opinions of district courts in the Sixth Circuit are instructive. *Turner*, 671 F. Supp. 2d at 971-73; *Stack*, 750 F. Supp. 2d at 894-95; *Peart v. Seneca Cnty.*, 808 F. Supp. 2d 1028, 1034 (N.D. Ohio Aug. 18, 2011); *Horen v. Lucas Cnty.*, No. 3:11-cv-1110, 2011 U.S. Dist. LEXIS 117773, at *4 (N.D. Ohio Oct. 12, 2011). In *Turner*, *Stack* and *Peart*, the district courts addressed this particular question in the context of the federal civil rights statute, 42 U.S.C. § 1983. *Turner*, 671 F. Supp. 2d at 971-73; *Stack*, 750 F. Supp. 2d at 894-95; *Peart*, 808 F. Supp. 2d at 1034. In each of those cases, the district courts pointed out that the rationale underpinning a county's ability to be sued under Ohio law is "'not conceptually distinct from the question of the entity's sovereign immunity as an arm of the State.'" *Stack*, 750 F. Supp. 2d at 898 (quoting *Turner*, 671 F. Supp. 2d at 971); *see also Peart*, 808 F. Supp. 2d at 1034 (quoting *Turner*, 671 F. Supp. 2d at 971). As such, the *Turner*, *Stack* and *Peart* courts found that "a governmental entity's status under state law is not conclusive of whether that entity may be sued under federal law, though state law does provide evidence of whether a given entity is, in fact, 'the State.'" *Turner*, 671 F. Supp. 2d at 972; *see also Stack*, 750 F. Supp. 2d at 898; *Peart*, 808 F. Supp. 2d at 1034. Instead, they determined that the

11

relevant question is whether a governmental entity is entitled to sovereign immunity under the Eleventh Amendment. *Turner*, 671 F. Supp. 2d at 971-73; *Stack*, 750 F. Supp. 2d at 898; *Peart*, 808 F. Supp. 2d at 1034. Applying the Eleventh Amendment to the facts of the case, each of the district courts held that an Ohio county, as a political subdivision, was not an arm of the state, was not entitled to Eleventh Amendment immunity in federal court, and was precluded from claiming protection from suit in federal court on grounds of lack of capacity under Section 301.22 of the Ohio Revised Code. *Turner*, 671 F. Supp. 2d at 971-73; *Stack*, 750 F. Supp. 2d at 898; *Peart*, 808 F. Supp. 2d at 1034.

The analyses set forth in *Turner*, *Stack* and *Peart* have been extended in at least one instance to other federal remedial statutes protecting individual rights, such as the FMLA and the ADA. *Horen*, 2011 U.S. Dist. LEXIS 117773, at *4 ("There appears to be no reason why the preemption flowing from § 1983 [as to an Ohio county's ability to sue or be sued] should not also apply to other federal remedial statutes protecting individual rights, such as the FMLA, ADA and Rehabilitation Act.").

This Court finds the analysis of those district courts to be correct. It is Eleventh Amendment immunity that determines whether Hamilton County can be sued under the federal laws.[2] Under the Eleventh Amendment, a state and its agencies generally are immune from private lawsuits in federal court by virtue of the Eleventh Amendment, unless that immunity has been expressly waived. *Mt. Healthy City Sch. Dist. Bd. of*

---

[2] While the Court notes, as did the district courts in *Stack* and *Turner*, that an argument that Section 301.22 is a capacity issue rather than an immunity issue has some merit, we find, for the same reasons set forth in *Stack* and *Turner*, that the Eleventh Amendment immunity analysis is proper here. *Stack*, 750 F. Supp. 2d at 898; *Turner*, 671 F. Supp. 2d at 970-71. A county's ability to be sued is so intertwined with the issue of immunity that to hold otherwise could limit or preclude a party's ability to bring what would be an otherwise valid claim under the federal remedial statutes at issue in this case.

*Educ. v. Doyle*, 429 U.S. 274, 280, 97 S. Ct. 568 (1977). As such, whether the Eleventh Amendment bars a suit against claims brought against an entity in federal court turns on the question of whether the entity is an "arm of the State." *Mt. Healthy,* 429 U.S. at 280; *Hutsell v. Sayre*, 5 F. 3d 996, 999 (6th Cir. 1993). The Court looks to Ohio law for guidance on whether a county is an "arm of the state." In Section 2743.01(B) of the Ohio Revised Code, a county is considered a "political subdivision" of the state. O.R.C. § 2743.01(B). Ohio courts also have recognized counties as "political subdivisions." *Zents*, 9 Ohio St. 3d at 205; *Schaffer*, 171 Ohio St. at 230; *see also Turner*, 671 F. Supp. 2d at 972 ("[T]here is no question that Lucas County, [Ohio] . . . is a 'political subdivision of the State of Ohio[.]" (citing Ohio Rev. Code § 2743.01(B))). As a political subdivision, a county is not immune from suit under the Eleventh Amendment. *Mt. Healthy*, 429 U.S. at 280 ("The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances . . . but does not extend to counties and similar municipal corporations."); *S.J. v. Hamilton Cnty*., 374 F.3d 416, 420 (6th Cir. 2004) (expressly affirming the "portion of the district court's order denying immunity to defendant Hamilton County[, Ohio]" with respect to a claim brought under federal law); *Turner*, 671 F. Supp. 2d at 972 (finding an Ohio county was not entitled to Eleventh Amendment immunity for a claim brought under 42 U.S.C. § 1983); *Stack*, 750 F. Supp. 2d at 897 (finding "the immunity afforded by the *Eleventh Amendment* [to be] inapplicable to Franklin County[, Ohio]"); *Horen*, 2011 U.S. Dist. LEXIS 117773, at *4 (county is not entitled to Eleventh Amendment immunity under federal remedial statutes of ADA, FMLA and Rehabilitation Act). Accordingly, Hamilton County is not entitled to sovereign immunity under the Eleventh Amendment, and it may

be sued in this Court under the ADA, Title VII, ADEA and FMLA regardless of its ability to sue or be sued under state law.

For the foregoing reasons, the Court decline to dismiss the claims asserted by Plaintiff in the Amended Complaint against Hamilton County on the basis that Hamilton County is not *sui juris*.[3]

## 2. Hamilton County as Plaintiff's "employer"

Given the above analysis, the next question is whether Plaintiff has sufficiently alleged that Hamilton County was her "employer" under the relevant statutes. *Satterfield v. Tennessee*, 295 F.3d 611, 617 (6th Cir. 2002) (recognizing that "Title VII, the ADEA, and the ADA define 'employer' essentially the same way, [and therefore] an analysis based on Title VII, the ADEA, and the ADA case law is appropriate [in a Title VII case]") (citing *Wathen v. GE*, 115 F.3d 400, 404 n.6 (6th Cir. 1997)); *Nelson v. Clermont Cnty. Veterans' Servs. Comm'n*, No. 1:11-cv-335, 2012 U.S. Dist. LEXIS 35230, at *12-18 (S.D. Ohio Mar. 15, 2012) (amended complaint did not plead facts sufficient to show an actual employment relationship between the employee and the board of county commissioners, finding as a matter of law that the board did not control the manner and means of the employee's work and was not her "employer" for purposes of the ADA, the FMLA, and Ohio Rev. Code Ann. § 4112.01(A)(2)). Defendants argue that Hamilton County should be dismissed as a Defendant because (1) there is no economic link between Plaintiff and Hamilton County sufficient to establish an employment relationship, and (2) Plaintiff made no allegations that plausibly could suggest that Hamilton County was involved in the decision to terminate

---

[3] While the Court declined to decide the *statutory* immunity issue under Ohio law with respect to Hamilton County, the issue of Eleventh Amendment immunity was raised in the briefs and intertwined with the *sui juris* argument made by Defendants as to Hamilton County. As such, the Court finds it appropriate to rule on that issue here.

Plaintiff. Plaintiff responds that Hamilton County indeed employed him based upon information received from Hamilton County indicating that Hamilton County's employment totals include the Juvenile Court and that employees of the divisions of Hamilton County have one employer – Hamilton County.

Ohio counties are creatures of statute and have only those powers that are expressly conferred to them by statute, or which are implied by an express power. *Rees v. Olmsted*, 135 F.296, 299 (6th Cir. 1905). "To determine whether a particular defendant is the 'employer' of a plaintiff, the Court of Appeals for the Sixth Circuit has held that a court must look to whether the alleged employer exercises control over the manner and means of plaintiff's work." *Nelson*, 2012 U.S. Dist. LEXIS 345230, at *12 (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 611-12 (6th Cir. 2003)). *See Satterfield*, 295 F.3d at 617 (observing that "the most important factor" in evaluating whether an entity is an employer of the plaintiff is "the employer's ability to control job performance and employment opportunities of the aggrieved individual").

Ohio law vests a board of county commissioners with the authority

> to employ a superintendent, and such watchmen, janitors, and other employees as are necessary for the care and custody of the court house, jail, and other county buildings, bridges, and other property under its jurisdiction and control.

O.R.C. § 305.16. Section 305.17 of the Ohio Revised Code provides that the "board of county commissioners shall fix the compensation of all persons appointed or employed under [Section] 305.16, inclusive, of the Revised Code, which, with their reasonable expenses, shall be paid from the county treasury upon the allowance of the board." O.R.C. § 305.17. At least one Ohio court has specifically interpreted the language of Section 305.16-.17 to permit the board of county commissioners to hire security guards

for the county facilities. *Britt v. Franklin Cnty. Comm'rs*, 148 Ohio App. 3d 395, 399-400 (Franklin App. 2002). Authority implicit in the statute therefore may include the ability to fire those security guards, and the ability to control the location, purpose or other aspects of the security guards' employment. *See id.*

However, Section 2151.13 of the Ohio Revised Code permits a juvenile judge to appoint "bailiffs, probation officers, and other employees as are necessary and [to] designate their titles and fix their duties, compensation, and expense allowances." O.R.C. § 2151.13. Those employees "shall serve during the pleasure of the judge." O.R.C. § 2151.13. Among the employees a juvenile judge may appoint is the superintendent of a detention facility, who is to serve at the pleasure of the judge. O.R.C. §§ 2151.13, 2152.42.

With respect to the detention center, it "shall be under the direction of a superintendent," and the superintendent "shall control, manage, operate, and have general charge of the facility." O.R.C. § 2152.42(A). The superintendent of a county detention facility "shall appoint all employees of the facility" and their salaries are to be paid in the same manner as the employees of the juvenile court by the county treasurer as appropriated for the operation of the court. O.R.C. §§ 2151.13, 2152.42(A).

Two district courts in the Sixth Circuit that have construed Sections 2151.13 and 2152.42 specifically have held that employees at county juvenile detention facility serve at the pleasure of the juvenile judge such that the county is not the responsible employer. *See Lavelle v. Wood Cnty.*, No. 3:09-cv-2998, 2010 U.S. Dist. LEXIS 62481, at *4-5 (N.D. Ohio June 23, 2010) (claims brought under ADA, ADEA, Title VII and Ohio law); *Burton v. Hamilton Cnty. Juvenile Court*, No. 1:04-cv-00368, 2005 U.S. Dist.

16

LEXIS 39775, at *9 (S.D. Ohio Dec. 5, 2005) (claim for discrimination under Title VII).

In *Lavelle*, the plaintiff sued Wood County, alleging that it acted as his employer while

he served as a detention officer at the Wood County Juvenile Detention Facility.  2010

U.S. Dist. LEXIS 62481, at *4.  Ruling on a motion brought by the defendant under Rule

12(b)(6), the district court found that Wood County was not a proper party to the action,

reasoning:

> Juvenile court officials "serve during the pleasure of the judge." Ohio Rev. Code § 2151.13.  The juvenile judge appoints the superintendent of a county juvenile detention facility, who in turn appoints the facility's employees.  Ohio Rev. Code § 2152.42.  The Ohio Supreme Court has held that officials or employees who serve at the pleasure of a judge hold their offices as a matter of law rather than as a matter of contract, and thus have "no vested interest or private right of property in their offices or employment."  *Malone v. Court of Common Pleas of Cuyahoga County*, 45 Ohio St. 2d 245, 248, 344 N.E.2d 126 (Ohio 1976) (quoting *Fuldauer v. Cleveland*, 32 Ohio St. 2d 114, 290 N.E.2d 546 (Ohio 1972).
>
> As a detention officer, Plaintiff served at the pleasure of the juvenile court judge; therefore, Plaintiff cannot seek relief for her discharge on the grounds that either Defendant Wood County or Defendant Wood County Juvenile Court acted as her employer. . . .
>
> [S]ole employment authority over juvenile court employees rests in the judges of those courts, not in any other county official or entity, including the county itself.

*Id. at* *5-6.  The Court further held that Plaintiff failed to establish an economic link

between herself and Wood County simply because the compensation for the Wood

County Juvenile Detention Facility and its employees came out of the county treasury.

*Id.*

Similarly, in *Burton*, the district court granted summary judgment to the Hamilton

County Board of Commissioners on the plaintiff's employment discrimination claim

under Title VII because there was no evidence it was responsible for hiring or firing a

Juvenile Corrections Officer at the Hamilton County Court Youth Center. 2005 U.S. Dist. LEXIS 39775, at *9. The district court's reasoning was similar to that in *Lavelle*, finding that a juvenile corrections officer served at the pleasure of the judges of that county. *Id.* at *10. In that case, the district court held it was the juvenile court judges, and not the board of county commissioners, who were responsible for the termination of the plaintiff's employment. *Id.*

Nevertheless, in *Chambers v. Hamilton County Job & Family Services*, No. 1:08-CV-00683, 2009 U.S. Dist. LEXIS 30177, at *5-8 (S.D. Ohio Mar. 24, 2009), the district court held that an employee of the Hamilton County Prosecutor's Office and the Hamilton County Job and Family Services department was an employee of Hamilton County itself under the FMLA. In so holding, the district court was unconcerned that each office had its own management and the heads of those departments were separately elected. *Id.* It looked instead to the FMLA policy manual governing the Plaintiff's employment, and the department that managed her annual and sick leave and other benefits, among other things. *Id.* at *6-7. The district court recognized that under the FMLA, a "state" or a "political subdivision" is considered a single employer and the employer of a division of state or political subdivision is the public agency under which it falls. *Id. at *7-8; see also Rollins v. Wilson Cnty. Gov't*, 154 F.3d 626, 629 (6th Cir. 1998). Thus, the district court concluded: "It defies logic and common sense to conclude that Plaintiff was not a county employee while working first for HCJFS and then later for the County Prosecutor. Defendants' argument would separate all county employees according to department and would deny employees benefits when they

18

transfer from one department to another." *Chambers*, 2009 U.S. Dist. LEXIS 30177, at *7.

Here, the Court finds it inappropriate to dismiss Hamilton County at this stage of the litigation on the basis that it is not Plaintiff's employer. In the Amended Complaint, Plaintiff alleges that she was a "Security Officer" for the Hamilton County Juvenile Court's Youth Center. (Doc. 14, ¶¶ 15-21). She further alleges that as a Security Officer, some of her responsibilities initially included "physically intervening with residents of the Youth Center who were acting out." (Doc. 14, ¶ 16). Her duties allegedly changed after she requested an accommodation, and she began working as the Lobby Reception and Security Officer. (Doc. 14, ¶ 21). While she does not specify in her Amended Complaint who hired her or fired her as a Security Officer or who controlled her day-to-day employment, she does allege that it was the then-Superintendent of the Youth Center who placed her on administrative leave in June 2010. (Doc. 14, ¶ 34). In the Answer of Defendants Grady and Bowman, they contend that Plaintiff was a Juvenile Corrections Officer, and deny that Plaintiff was a Security Officer. (Doc. 17, ¶¶ 15, 27).

Although this Court recognizes that some of the allegations in the Amended Complaint suggest that Plaintiff was a juvenile court employee, at this stage of the litigation the allegations are construed in the light most favorable to Plaintiff and are accepted as true. In doing so, this Court finds that it is plausible that Plaintiff fell into the category of security guards who were employed by the board of county commissioners for the care and custody of the court house, jail, and other county buildings. It also is unclear which "public agency" could be considered Plaintiff's "employer" for the

19

purposes of the FMLA.  Therefore, at this stage of the litigation, there is a sufficient economic link between Hamilton County and Plaintiff for the claims to proceed.

Accordingly, for the foregoing reasons, the Court finds that Plaintiff has stated a plausible claim for relief against Hamilton County as her "employer," and the Court declines to dismiss Hamilton County as a Defendant on this basis.

### 3. Service on Hamilton County

Defendants' third argument for dismissal of Hamilton County is that Hamilton County was not served within 120 days of the Complaint, or the Amended Complaint, being filed with the Court.  Fed. R. Civ. P. 4(c)(1) and (5).  Plaintiff disputes that contention, arguing that Defendant Hamilton County signed the waiver of service of summons addressed to Hamilton County on June 3, 2011.  Defendants respond that the waiver was signed on behalf of the "Hamilton County Administration Building," and not Hamilton County, because Hamilton County is not *sui juris* and not the proper defendant.  These arguments raise two issues:  (1) whether Hamilton County was served; and (2) if Hamilton County was not served, then whether Hamilton County should be dismissed under Federal Rule of Civil Procedure 4(m) for lack of service within 120 days after the complaint is filed.

"Due process requires proper service of process in order to obtain in personam jurisdiction."  *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir. 1976).  The sufficiency of process and service of process are relevant to the Court's exercise of jurisdiction despite the actual knowledge that Hamilton County has of this adversary proceeding.  *Friedman v. Estate of Presser*, 929 F.2d 1151, 1156 (6th Cir. 1991).  Although some courts construe the service requirements for a summons liberally and

require only substantial compliance with those requirements if the defendant obtains actual notice of the lawsuit, the Sixth Circuit has required that a plaintiff strictly comply with the applicable service requirements despite any actual notice the defendants have of the litigation.  *See Friedman*, 929 F.2d at 1156 ("Due to the integral relationship between service of process and due process requirements, we find that the district court erred in its determination that actual knowledge of the action cured a technically defective service of process. . . . In short, the requirement of proper service of process is not some mindless technicality.") (internal citations omitted).

Although Federal Rule of Civil Procedure 4 is a flexible rule, "which principally requires sufficient notice to the party of claims brought against it" and "a defendant's answer and appearance in an action should be enough to prevent any technical error in form from invalidating the process[,]"  *Gottfried v. Frankel*, 818 F.2d 485, 493 (6th Cir. 1987) (internal citations omitted), Hamilton County has not filed an answer or appeared in this adversary proceeding on its own behalf.  Rather, a waiver directed to Hamilton County was returned on behalf of the Hamilton County Administration Building only, and all of the pleadings filed by Defendants have indicated that Hamilton County has not appeared or been properly served in this case.  There is no evidence that any other type of service of the summons and complaint has been perfected on Hamilton County. While recognizing that Hamilton County is undoubtedly aware of this lawsuit, the Court finds that Plaintiff must address any insufficiencies in the service of process.

The need for Plaintiff to correct the deficiencies in process and service of process raises the issue of whether Plaintiff doing so at this stage of the litigation would be

21

timely. Federal Rule of Civil Procedure 4(m) governs the time limit for service of a complaint and summons, providing:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). As previously discussed, there appear to be insufficiencies in Plaintiff's service of Hamilton County, and at the time Defendants filed the Motion to Dismiss at issue here, the time limit for service imposed by Rule 4(m) had passed. If Plaintiff were to demonstrate good cause for her failure, the Court would be required to extend the time for service. *See* Fed. R. Civ. P. 4(m). Plaintiff, however, has not attempted to demonstrate good cause for her failure to serve Hamilton County, instead arguing only that Hamilton County was indeed served with a waiver, which was returned signed. As such, the Court has the discretion to dismiss this adversary proceeding without prejudice pursuant to Rule 4(m).

However, Rule 4(m) also permits a Court to order that service be made within a specified time, even where good cause has not been demonstrated. Fed. R. Civ. P. 4(m); *see also Henderson v. United States*, 517 U.S. 654, 662-63, 116 S. Ct. 1638 (1996); *Johnson v. Hayden*, No. 99-3959, 2000 U.S. App. LEXIS 22255, at *10 n. 3 (6th Cir. Aug. 24, 2000). Here, the Court finds that under the circumstances of the case an extension is justified. *Gottfried*, 818 F.2d at 493 ("[D]ismissal is not appropriate unless the party has been prejudiced."); *see also Stafford v. Franklin Cnty., Ohio,* No. 2:04-cv-178, 2005 U.S. Dist. LEXIS 12740, at *3 (S.D. Ohio June 28, 2005) (holding that, when deciding whether to exercise its discretion under Rule 4(m), it was necessary to

22

consider considering whether an extension of time would prejudice defendant). At the outset of this lawsuit, Plaintiff requested a waiver of service from Hamilton County, addressing it to the county's Administration Building. That waiver of service was returned, but it was signed on behalf of the Hamilton County Administrative Building, which Defendants argue was not service on Hamilton County itself. Plaintiff also served Hamilton County's Board of County Commissioners, for whom a signed waiver was returned. Although Plaintiff dropped the Board of County Commissioners from her Amended Complaint, the Board of County Commissioners would have received electronic notice of the Amended Complaint through the Court's electronic filing system. Although the foregoing may not demonstrate actual service on Hamilton County, it demonstrates Hamilton County has had knowledge of this lawsuit from the outset. Moreover, Hamilton County's interests have been represented in this lawsuit to date, as Defendants have argued in the Motion to Dismiss that is addressed in this Opinion and Order that Hamilton County is not *sui juris* and is not a proper party to this lawsuit. In considering the Motion to Dismiss, this Court now has determined that Hamilton County is capable of being sued in this case and is a proper party to this lawsuit. *See* Fed. R. Civ. P. 4(j) (proscribing methods for service on a state or local government "*that is subject to suit*" (emphasis added)). Further, Defendants have not suggested that any prejudice will result from an extension of service time, other than the inherent prejudice of having to defend in this suit. Finally, it is important to note that by exercising its discretion to permit an extension of time to effectuate service, this Court is acting consistently with the Sixth Circuit's "preference for deciding cases on the merits." *Thacker v. City of Columbus*, 328 F.3d 244, 252 (6th Cir. 2003); *see also Stafford*, 2005

23

U.S. Dist. LEXIS 12740, at *10 (noting that "disputes should be resolved on their merits rather than procedural or technical grounds").

Accordingly, the Court will provide Plaintiff with 20 days after the entry of this Opinion and Order to properly serve the summons and Amended Complaint on Hamilton County in accordance with Rules 4 and 5 of the Federal Rules of Civil Procedure.

### C. Eleventh Amendment Immunity

Defendants raise several arguments as to Eleventh Amendment immunity.  As stated above, a state and its agencies are generally immune from private lawsuits in federal court by virtue of the Eleventh Amendment, unless that immunity has been expressly waived.  *Mt. Healthy*, 429 U.S. at 280.  Where an officer of a state or its agencies is sued in his or her official capacity, the suit is equivalent to a suit against that state or its agency that the officer represents.  *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S. Ct. 3099 (1985) (citing *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 690 n. 55, 98 S. Ct. 2018 (1978)); *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004).  "The only immunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua* entity, may possess, such as the Eleventh Amendment."  *Graham*, 473 U.S. at 167.  The burden to prove Eleventh Amendment immunity rests with the party asserting it and who would benefit from its acceptance.  *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

Application of the Eleventh Amendment as a bar to claims brought in federal court frequently turns on the question of whether the institution or an officer sued in his

24

official capacity is an arm of the state. *Mt. Healthy*, 429 U.S. at 280; *Hutsell*, 5 F.3d at 999. The Sixth Circuit employs a multi-factor test to determine whether such an entity or officer is an arm of the state. *Ernst v. Rising*, 427 F.3d 351, 359-60, 364-65 (6th Cir. 2005) (en banc). These factors include: (1) the state's obligation to pay any judgment that would accrue against the entity; (2) how the state's statutes and courts have referred to the entity and the degree of control the state has over the entity; (3) whether state or local officials appoint the entity's board members; and (4) whether the entity's functions are akin to traditional state or local functions. *Id.*; *see also S.J.*, 374 F.3d at 420.

Where the Eleventh Amendment is applicable, a federal court cannot grant prospective or retroactive relief against a state or nominally against its officials on the basis of state law. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Pennhurst State Sch. & Hosp. & Halderman*, 465 U.S. 89, 106 (1984); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). A federal court also is precluded from awarding compensatory or retrospective relief against a state or its officials on the basis of federal law. *Papasan v. Allain*, 478 U.S. 265, 281, 106 S. Ct. 2932 (1986); *Edelman v. Jordan*, 415 U.S. 651, 669, 94 S. Ct. 1347 (1974). It may, however, issue declaratory or injunctive relief that is properly characterized as "prospective" to compel state officials to comply with *federal* law, regardless of whether compliance may have an ancillary effect on the state treasury. *Will*, 491 U.S. at 71 & n. 10; *see also Edelman*, 415 U.S. at 664-65; *Dubuc v. Mich. Bd. of Law Examiners*, 342 F.3d 610, 616 (6th Cir. 2003) (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

**1. State Law Claims Against Judge Grady in Official Capacity
Representing the Hamilton County Juvenile Court**

Plaintiff sues Judge Grady as a representative of the Hamilton County Juvenile Court. Defendant contends that in her official capacity, Judge Grady qualifies as an arm of the state entitled to sovereign immunity because both the Court of Common Pleas and the Juvenile Court have been held to be arms of the state. We agree with Defendants on this issue.

In *Mumford v. Basinski*, 105 F.3d 264, 269 (6th Cir. 1997), the Sixth Circuit held that an Ohio Court of Common Pleas is an arm of the State of Ohio and entitled to Eleventh Amendment immunity. Its subsequent decision in *Alkire v. Irving*, 330 F.3d 802, 811-13 (6th Cir. 2003) did not overrule *Mumford*. *See S.J. v. Hamilton Cnty.*, 374 F.3d 416, 421 (6th Cir. 2004); *Triplett v. Connor*, 109 Fed. App'x 94, 96 n.4 (6th Cir. 2004). Moreover, the Sixth Circuit has, on at least two occasions since *Alkire*, reaffirmed the holding in *Mumford*. *Triplett*, 109 Fed. App'x at 96; *Meyers v. Franklin Cnty. Court of Common Pleas*, 81 Fed. App'x 49, 55 (6th Cir. 2003); *see also Tanner v. Muskingum Cnty. Court of Common Pleas*, No. 2:07-cv-711, 2008 U.S. Dist. LEXIS 1538, at *2-3 (S.D. Ohio Jan. 9, 2008); *Howard v. Supreme Court*, No. 2:07-cv-0514, 2007 U.S. Dist. LEXIS 79354, at *4 (S.D. Ohio Oct. 25, 2007), *adopted in its entirety at*, 2008 U.S. Dist. LEXIS 6437 (S.D. Ohio Jan. 14, 2008).

Nevertheless, whether the Ohio Court of Common Pleas is an arm of the state does not conclusively resolve the issue, as we must now determine whether the Juvenile Court also is an arm of the state. In an opinion issued by the Sixth Circuit following its decision in *Alkire*, it held that under "the Eleventh Amendment, the Juvenile Court is considered an arm of the state." *Meyers*, 81 Fed. App'x at 55. Although lacking binding precedent as an unpublished opinion, *Meyers* is instructive here.

Moreover, the Sixth Circuit later issued a published decision in which it strongly suggested that a juvenile court should be considered an arm of the state. *See S.J.*, 374 F.3d at 421-22. In *S.J.*, the Sixth Circuit was asked to determine whether a juvenile detention center, Hillcrest, was an arm of the state. *Id.* Although its holding was related solely to its determination on that issue, it stated the following with respect to the Juvenile Court's status as an arm of the state:

> To the extent that considerations of dignity are relevant in determining whether an entity is protected by state sovereign immunity, one would expect this factor to weigh heavily in a suit against a state court. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-79, 82 L. Ed. 1188, 58 S. Ct. 817 (1938) ("The constitution of the United States . . . recognizes and preserves the autonomy and independence of the states . . . in their judicial departments."). Such courts are the "adjudicative voice" of the state itself. *Harris* [*v. Missouri Court of Appeals*], 787 F.2d [427,] 429 [(8th Cir. 1986)]. That is particularly true in the context of a court system that, like Ohio's, is mandated by the state constitution to be uniform and to be supervised by one supreme court. Ohio Const. art. IV, § 5; *Foster* [*v. Walsh*], 864 F.2d [416,] 418 [(6th Cir. 1988)]. While lower state courts may sometimes be funded by the counties where they sit, separation of powers concerns frequently preclude counties and other branches of government from denying reasonable funding for the operation of the courts. *See, e.g.*, Ohio Rev. Code § 307.01(B); *State ex rel. Weaver v. Lake County Bd. of Comm'rs*, 62 Ohio St. 3d 204, 580 N.E.2d 1090, 1092 (Ohio 1991); *Mumford*, 105 F.3d at 269; *cf. Tennessee v. Lane*, 158 L. Ed. 2d 820, 124 S. Ct. 1978, 1991 n.16 (2004) (observing that "the provision of judicial services" is "an area in which local governments are typically treated as arms of the state for Eleventh Amendment purposes.") (punctuation omitted).

*Id.*

In the present case, this Court will follow the guidance from the Sixth Circuit in *Meyers* and *S.J.* The Court finds the reasoning in those cases to be both correct and applicable, particularly in the case of Hamilton County where the juvenile court is closely tied in with the court of common pleas given that the judges of the court of common pleas exercise the powers and jurisdictions of the juvenile court. O.R.C. § 2151.08. As

27

such, and given that there is no evidence that the State of Ohio has waived its immunity to be sued in federal court under state law, the Court finds that the Hamilton County Juvenile Court itself is an arm of the state. Judge Grady, as sued in her official capacity representing the Hamilton County Juvenile Court, is therefore entitled to sovereign immunity under the Eleventh Amendment. As such, this Court lacks the authority to grant any type of prospective or retroactive relief against Judge Grady on the basis of state law. *Pennhurst*, 465 U.S. at 106; *O'Hara*, 24 F.3d at 826. Accordingly, Plaintiff's state law claims set forth in Counts III, V and VII against Judge Grady in her official capacity representing the Hamilton County Juvenile Court are dismissed in their entirety.

### 2. State Law Claims Against Superintendent Bowman in Official Capacity Representing the Youth Center

We now turn to the analysis as to Superintendent Bowman in his official capacity representing the Hamilton County Juvenile Court's Youth Center. Defendants contend that official-capacity suits against the Youth Center are barred by the Eleventh Amendment because the Youth Center is an arm of the state, as it is so connected to the Hamilton County Juvenile Court under Ohio law. Plaintiff disputes that contention. As it is not clear that the Youth Center should be considered an arm of the state, the analysis of the issue requires a consideration of the factors generally relied upon by the Sixth Circuit in determining whether an entity is an arm of the state.

#### a. State's Obligation to Pay Judgment

Superintendent Bowman has not set forth any argument specific to this factor. Rather, he argues that the Youth Center is an arm of the state because it is connected to the Juvenile Court and that because it is an arm of the state, it is logical that the state

28

would pay a money judgment.  In support, he cites to a prior opinion of this Court in *S.L. v. Peirce Twp. Bd. of Trs.*, No. 1:07-cv-986, 2009 U.S. Dist. LEXIS 31367, at *23 (S.D. Ohio. Mar. 26, 2009), which reasoned that if the juvenile detention center was "part of the juvenile court th[e]n the logical conclusion is that the state would pay any judgment but if it is part of the county then the county would likely pay the judgment."  Notably, in that case this Court held that it could not determine on the motion to dismiss who would be responsible for a judgment against the juvenile detention center, even though that defendant had cited sections of the Ohio Revised Code regarding insurance held by the state to insure the judge who was sued in his official capacity as an representative of the detention center.  *Id.*

Here, Superintendent Bowman relies on the statutory scheme to support his contention that the Hamilton County Youth Center *is* the Hamilton County Juvenile Court.  However, the Sixth Circuit has recognized that which entity will pay a money judgment is the most important factor in the arm-of-the-state analysis.  Although the statutory scheme provides a connection between the Youth Center and the juvenile court, which the Court concluded above is an arm of the state, it does not conclusively establish which entity – the state or the county – would pay a money judgment against the Youth Center.  Moreover, Superintendent Bowman has not demonstrated that the same reasoning applicable to the juvenile court is or should be applicable to the Youth Center.  This Court therefore lacks sufficient information upon which to base a determination at this stage of the litigation that the State of Ohio would be responsible for a judgment against the Youth Center.  As it would be premature to make this determination without any argument or evidence specifically directed towards this issue,

the Court concludes that Superintendent Bowman has failed to meet his burden on this factor at this time.

        b.  How the State's Statutes and Courts have Referred to the Entity
           and the Degree of Control the State Has Over the Entity

Section 2152.41(A) of the Ohio Revised Code states: "Upon the recommendation of the judge, the board of county commissioners shall provide, by purchase, lease, construction or otherwise, a detention facility that shall be within a convenient distance of the juvenile court."  O.R.C. § 2152.41(A).  In addition, Section 2152.42(A) provides that "Any detention facility established under section 2152.41 of the Revised Code shall be under the direction of a superintendent.  The superintendent shall be appointed by, and under the direction of, the judge or judges . . . The superintendent serves at the pleasure of the juvenile court . . . ."  O.R.C. § 2152.42(A).  Based on the foregoing, the State statutes provides for a connection between a juvenile detention facility and the juvenile court, which is part of the common pleas court.  Since the common pleas court and the juvenile court are part of the state judicial system, the statutory consideration weighs in favor of sovereign immunity of the Youth Center.

Now the Court turns to how the courts have referred to juvenile detention centers.  In *Oswald v. Lucas County*, No. 99-3771, 2000 U.S. App. LEXIS 27990, at *5 (6th Cir. Oct. 30, 2000), the Sixth Circuit held that a "juvenile detention center" defined under what is now Section 2151.41 of the Ohio Revised Code (formerly Section 2151.34) was "part of the juvenile court which is an arm of the state" and therefore was entitled to sovereign immunity.  Following that opinion, the Sixth Circuit rendered its decision in *S.J.*, 374 F.3d at 422.  In *S.J.*, the Sixth Circuit pointed out that *Oswald* is an unpublished decision that lacks binding precedential value, but it simultaneously noted

30

that the language in Section 2151.41 that provides the county "shall" create the detention facility upon the recommendation of the juvenile court is a factor that distinguishes a detention center from other similar facilities of the county. *S.J.*, 374 F.3d at 422. A few months later, the Sixth Circuit issued its opinion in *Nixon v. Belmont-Harrison Juvenile Dist.*, 113 Fed. App'x 51, 54-55 (6th Cir. 2004). In that opinion, the Sixth Circuit considered whether a multi-county juvenile detention facility was an arm of the state. *Id.* In considering the issue, the Sixth Circuit pointed out that there are multiple factors to consider in determining whether an entity is an arm of the state. *Id.* at 54. It noted, however, that the record from the district court contained no information on those factors and that the "unpublished opinion in *Oswald*" upon which the district court relied without any discussion involved a single-county facility rather than a multi-district facility that was at issue in that case. *Id.* Therefore, the Sixth Circuit determined that the record before it was insufficient to permit it to review the district court's Eleventh Amendment immunity decision. *Id.* at 54-55. Since the burden was on the defendant to raise the issue and it did not do so, the Sixth Circuit concluded that the issue need not be considered further and it went on to consider the merits of the plaintiff's claims. *Id.* at 55.

As for the district courts, at least two in the Sixth Circuit (this Court included) have declined to dismiss a case based on a juvenile detention center's Eleventh Amendment immunity, holding that further discovery was necessary to make that determination. *Sanford v. Cnty. of Lucas*, No. 3:07-cv-3588, 2009 U.S. Dist. LEXIS 20774, at *11 (N.D. Ohio Mar. 16, 2009); *S.L.*, 2009 U.S. Dist. LEXIS 31367, at *23-26.

Nevertheless, in *S.L.*, this Court determined that this particular factor weighed in favor of sovereign immunity. 2009 U.S. Dist. LEXIS 31367, at *24.

Having considered the foregoing, this Court concludes that this factor weighs in favor of sovereign immunity for the Youth Center.

### c. Whether State or Local Officials Appoint the Board Members

Under the Ohio Revised Code, a single-county detention center such as the Youth Center does not have its own board. *See* O.R.C. § 2152.41(A)-(B). Rather, it is the board of county commissioners who, upon recommendation of the judge, "shall provide, by purchase, lease, construction, or otherwise, a detention facility." O.R.C. § 2152.41(A). It also is the county that is responsible for paying the expenses incurred in maintaining the facility, although it may request assistance from the department of youth services. O.R.C. §§ 2152.42(B), 2152.43(A), 5139.281.

The Ohio Revised Code also provides that the juvenile judge appoints the superintendent of the detention center, that the superintendent shall be under the direction of the juvenile judge, and that the superintendent shall serve at the pleasure of the juvenile court. O.R.C. § 2152.42(A). The superintendent is then responsible for appointing the employees of the facility whose salaries are provided for in Sections 2151.13 and 2152.42(B) of the Ohio Revised Code. O.R.C. §§ 2151.13, 2152.42(A)-(B).

In light of the above, this factor is weighs in favor of sovereign immunity for the Youth Center.

### d. Whether the Entity's Functions are Akin to Traditional State or Local Functions

This factor is evenly balanced at this stage of the litigation.  The county, city and state all operate detention facilities.  Although the county juvenile detention centers are provided for by state laws, those centers serve the local community and are paid for by the local governments.  However, they also provide a benefit to the public at large and allow for the judicial system to operate effectively.  Considering the above, this Court finds at this stage of the litigation that the operation of the Youth Center is equally akin to a state and local function.

### e.  Summary Conclusion

Given the inconclusiveness of the evidence currently before the Court, a final determination on whether to extend Eleventh Amendment immunity to the Youth Center cannot be made.  Therefore, the Court declines to dismiss Plaintiff's state law claims set forth in Counts III, V and VII against Superintendent Bowman in his official capacity representing the Youth Center at this stage of the litigation.

### 3.  **FMLA claims**

"The clarity of Congress's intent to abrogate state sovereign immunity with regard to the provisions of the FMLA is 'not fairly debatable.'"  *Touvell v. Ohio Dep't of Mental Retardation & Developmental Disabilities*, 422 F.3d 392, 395 (6th Cir. 2005) (quoting *Nev. Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 728, 123 S. Ct. 1972 (2003)). "The Act enables employees to seek damages 'against any employer (including a public agency) in any Federal or State court of competent jurisdiction,' 29 U.S.C. § 2617(a)(2), and Congress defined 'public agency' to include both "the government of a State or political subdivision thereof" and 'any agency of . . . a State, or a political subdivision of a State,' §§ 203(x), 2611(4)(A)(iii)."  *Id.* at 395-96.  However, the abrogation of state's

sovereign immunity has been found to extend only to the family-care provision of the FMLA, Section 2612(a)(1)(C); it has not been extended to the self-care provision of the FMLA, Section 2612(a)(1)(D). *Coleman v. Court of Appeals of Md.*, _ U.S. _, 132 S. Ct. 1327, 1333-34, 1388 (2012) (holding that although the family-care provision under § 2612(a)(1)(C) is enforceable against the states based on a valid abrogation of sovereign immunity, the self-care provision of the FMLA, § 2612(a)(1)(D), is not); *see also Touvell*, 422 F.3d at 397-400 (citing *Hibbs*, 538 U.S. at 728; *Brockman v. Wyo. Dep't of Family Servs.*, 342 F.3d 1159 (10th Cir. 2003), *cert. denied*, 540 U.S. 1219, 124 S. Ct. 1509 (2004)). In other words, a plaintiff may maintain an action against the State under the family-care provision of Section 2612(a)(1)(C) but may not maintain a private action against the State under the self-care provision of Section 2612(a)(1)(D) except to the extent she seeks prospective injunctive relief as permitted by *Ex parte Young*, 209 U.S. 123 (1908). *Coleman*, 132 S. Ct. at 1350 (dissent noted that such prospective injunctive relief was still available); *see also Touvell*, 422 F.3d at 397-400; *Dubuc*, 342 F.3d at 616 (citing *Verizon Md., Inc.*, 535 U.S. at 645).

As the Court already has analyzed the "arm of the state" issues with respect to each of the Defendants, that analysis is incorporated here. In light of that analysis, the Court concludes that Plaintiff may maintain an action under the family-care provision against all Defendants, regardless of whether they are arms of the state. As such, the Court will not dismiss Plaintiff's claims under Section 2612(a)(1)(C) against any Defendants.

With respect to the self-care provision, the Court concludes that Plaintiff may maintain an action against those Defendants that are not arms of the state, but may

maintain only an action for prospective relief against those Defendants that are deemed arms of the state.  As such, the Court concludes as to the claims brought under the self-care provision in Section 2612(a)(1)(D) that (1) as to Hamilton County, the claim will not be dismissed, as Hamilton County is not an arm of the state; (2) as to Superintendent Bowman in his official capacity representing the Youth Center, the claim will not be dismissed at this stage of the litigation because the final resolution of that issue depends on whether the Youth Center is found to be an arm of the state; and (3) as to Judge Grady in her official capacity representing the Hamilton County Juvenile Court, the claim will be dismissed to the extent she seeks retroactive and compensatory damages but will not be dismissed with respect to her request for proper prospective relief.

In the instant case, the relief that Plaintiff seeks includes:  that Defendants be enjoined from further unlawful conduct as described in the Complaint, reinstatement, compensatory damages including emotional distress damages, all lost pay and benefits, front pay, punitive damages, liquidated damages, pre-judgment interest, reasonable attorney' fees, compensation for adverse tax consequences of receiving a lump sum award rather than her compensation over several, separate tax years, and other legal and equitable relief.  (Doc. 14, p. 9).  With the exception of the injunctive relief prohibiting further unlawful conduct and prospective reinstatement, all of the relief sought is retroactive or would involve payments from the state treasury that do not arise from future compliance with the law.[4]  Therefore, the only prospective remedies

---

[4] *See, e.g.*, *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir.2002) (prospective reinstatement permitted as recovery against state official); *Freeman v. Mich. Dep't of State*, 808 F.2d 1174, 1179 (6th Cir. 1987) (holding that back pay, front pay, and fringe benefits are barred in an *Ex parte Young* claim, but an injunction against future unlawful activity is not); *Thomson v. Harmony*, 65 F.3d 1314 (6th Cir. 1995)

available against a defendant deemed an arm of the state are prospective injunctive relief and prospective reinstatement.

### 4. **ADEA claims**

Under the ADEA, the term "employer" is defined to include "a State or political subdivision of a State and any agency or instrumentality of a State or a political subdivision of a State."  42 U.S.C. §§ 2000e, 2000e-2; 29 U.S.C. § 630(b).  However, despite the fact that the ADEA applies to state governments, the Supreme Court has held that state employees could not sue states for monetary damages under the ADEA. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000),   The Supreme Court reasoned that states have sovereign immunity unless the state consents or another exception applies.  *Id.*  Sovereign immunity, however, does not preclude private suits against state officers for prospective injunctive relief or declaratory relief.  *Id.  See also Quern v. Jordan,* 440 U.S. 332, 337, 99 S. Ct. 1139, (1979); *Edelman*, 415 U.S. 651.

As with the FMLA claims, the ability of Plaintiff to maintain this claim against Defendants turns on whether they are arms of the state.  Again, the Court incorporates its prior analysis here.  Accordingly, the Court concludes that: (1) as to Hamilton County, Plaintiff's claim under the ADEA will not be dismissed, as Hamilton County is not an arm of the state; (2) as to Superintendent Bowman in his official capacity as a representative of the Hamilton County Juvenile Court's Youth Center, Plaintiff's claim under the ADEA will not be dismissed at this stage of the litigation, as the final

---

(*Ex parte Young* remedies for wrongfully terminated student include prospective reinstatement, future support, and expungement of record but not retroactive remedies); *Yates-Mattingly v. Univ. of Cincinnati*, No. 1:11-cv-753, 2012 U.S. Dist. LEXIS 124101, at *8-9 (S.D. Ohio Aug. 31, 2012) (lost pay, benefits, front pay, compensatory damages, liquidated damages, punitive damages, attorneys' fees and costs, prejudgment interest and compensation for adverse tax consequences barred in official-capacity claim); *Galli v. Morelli*, No. 01cv1056, 2003 U.S. Dist. LEXIS 15138 at *5 (S.D. Ohio Aug. 15, 2003) (back pay and front pay are barred in an official-capacity claim).

resolution depends on whether the Youth Center is found to be an arm of the state; and (3) as to Judge Grady in her official capacity representing the Hamilton County Juvenile Court, Plaintiff's claim under the ADEA for monetary or retroactive relief is dismissed, but her claim under the ADEA for prospective relief will not be dismissed.[5]

### 5. <u>ADA claims</u>

Plaintiff alleges she was terminated in violation of Title I of the ADA.  The Supreme Court has held that the Eleventh Amendment bars federal employment discrimination suits against a state under Title I of the ADA. *Bd. of Trs. v. Garrett*, 531 U.S. 356, 374, 121 S. Ct. 955 (2001); *Whitfield v. Tennessee*, 639 F.3d 253, 257 (6th Cir. 2011).  However, a plaintiff may seek prospective relief against government officials under Title I. *Whitfield*, 639 F.3d at 257.

As with the FMLA and ADEA claims, the ability of Plaintiff to maintain this claim against Defendants turns on whether they are arms of the state, and the prior analysis on this issue is incorporated here.  Based on that prior analysis, this Court concludes that: (1) as to Hamilton County, Plaintiff's claim under the Title I of the ADA remains pending, as Hamilton County is not an arm of the state; (2) as to Superintendent Bowman in his official capacity as a representative of the Youth Center, Plaintiff's claim under Title I of the ADA remains pending at this stage of the litigation, with the final resolution depending on whether the Youth Center is found to be an arm of the state; and (3) as to Judge Grady in her official capacity representing the Hamilton County Juvenile Court, Plaintiff's claim under Title I of the ADA for monetary or retroactive relief is dismissed, but her claim under Title I of the ADA for prospective relief remains pending.

---

[5] For an analysis of the prospective relief that is available, see the analysis above on pages 34-35.

### d.  **Title VII**

The Eleventh Amendment does not bar a federal court action against a state under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq. Fitzpatrick v. Bitzer*, 427 U.S. 445, 451-56 (1976) (finding that Congress abrogated the states' sovereign immunity by enacting Title VII); *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 571 (6th Cir. 2000) (allowing Title VII claims against state university to go forward notwithstanding the Eleventh Amendment).  As such, Defendants do not seek dismissal of the Title VII claims on this basis.  Rather, Defendants seek to dismiss the Title VII claims against them on the basis of the "personal staff" exemption set forth in 42 U.S.C. § 2000e(f).

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual" based on his or her inclusion in a protected class.  42 U.S.C. § 2000e-2(a)(1).  Courts have limited Title VII's protections to individuals who are "employees."  *See Birch v. Cuyahoga Cnty. Probate Court*, 392 F.3d 151, 157 (6th Cir. 2004) (explaining that Title VII's protections apply only to those who are "employees") (citing *Llampallas v. Mini-Circuits, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998)).  Section 2000(e)(f) sets forth the parameters for who may be considered an employee for the purposes of bringing a discrimination claim under Title VII.  42 U.S.C. § 2000e(f); *see also Birch*, 392 F.3d at 157.  It provides, in pertinent part:

> The term "employee" means an individual employed by an employer, except that the term "employee" shall not include any person elected to public office in any State or political subdivision of any State by the qualified voters thereof, *or any person chosen by such officer to be on such officer's personal staff*, or an appointee on the policy making level or an immediate adviser with respect to the exercise of the

> constitutional or legal powers of the office. The exemption set forth in
> the preceding sentence shall not include employees subject to the
> civil service laws of a State government, governmental agency or
> political subdivision.

42 U.S.C. § 2000e(f) (emphasis added).

The Sixth Circuit has set forth six non-exhaustive factors to be considered in determining whether a government employee is subject to the "personal staff" exemption, which are:

> "(1) whether the elected official has plenary powers of appointment
> and removal, (2) whether the person in the position at issue is
> personally accountable to only that elected official, (3) whether the
> person in the position at issue represents the elected official in the
> eyes of the public, (4) whether the elected official exercises a
> considerable amount of control over the position, (5) the level of the
> position within the organization's chain of command, and (6) the
> actual intimacy of the working relationship between the elected
> official and the person filling the position."

*Birch*, 392 F.3d at 158 (quoting *Walton v. Mich.*, 918 F.2d 958 (6th Cir. 1990) (internal quotations omitted)). According to the Sixth Circuit, the "'personal staff' exception becomes less applicable the lower the particular employee's position because the exception was primarily intended to exempt the elected official's immediate subordinates or those who are his first line advisors.'" *Id.* (quoting *Montgomery v. Brookshire*, 34 F.3d 291, 296 (5th Cir. 1994) (internal quotation marks and citations omitted)). Moreover, the "exemption is to be construed narrowly and involves a highly factual inquiry[.]" *Id.* (citing *Teneyuca v. Bexar County*, 767 F.2d 148, 152 (5th Cir. 1985)).

At this stage of the litigation, the Court cannot determine as a matter of law that Plaintiff is subject to the "personal staff" exemption. Defendants contend that Plaintiff served as a member of the juvenile court judge's "personal staff," but an evaluation of

each of the six factors articulated in *Birch* is not conclusive on the issue. Although the juvenile court judge has the power to employ various individuals under Ohio law, *see* O.R.C. § 2151.13, it is not clear that Plaintiff was accountable to the juvenile court judge exclusively. As an initial matter, the facts alleged by Plaintiff create ambiguity as to Plaintiff's exact position, and thus, to the issue of who employed her. If she was a juvenile court employee, then Section 2152.42(A) of the Ohio Revised Code indicates that she would have been appointed by the superintendent, who was appointed by the juvenile court judge and who serves at the pleasure of the juvenile court. O.R.C. § 2152.42(A)-(B). The Ohio Revised Code further provides that the superintendent "shall control, manage, operate, and have general charge of the facility." O.R.C. § 2152.42(A). It therefore is plausible that Plaintiff would be accountable to individuals other than the juvenile court judge, and that individuals other than the juvenile court judge would have considerable control over Plaintiff's position. Moreover, there is no indication in the statutory scheme that Plaintiff would on any occasion have direct contact or a direct working relationship with the juvenile court judge. Rather, the structure set forth above would make a person in the position of a juvenile court employee at least one step removed from the juvenile court judge. As that position would therefore be beyond the "first line of advisors" of the juvenile court judge, the exception becomes less applicable. Finally, there is no argument made here that demonstrates conclusively whether a person in Plaintiff's position represents the juvenile court judge in the eyes of the public. The only argument made by Defendants is that the district court in *Lavelle*, 2010 U.S. Dist. LEXIS 62481, concluded that because a juvenile detention officer at a county juvenile detention facility served at the

40

pleasure of the juvenile judge, he had the sort of personal accountability to the judge that would qualify him as a member of the judge's "personal staff."  *Lavelle* is non-binding precedent on this Court, and its decision was rendered without analysis of any of the factors described in *Birch*.  When those factors are closely examined (as this Court did above), it is apparent that more evidence is necessary before a conclusive determination can be made.

Accordingly, this Court declines to dismiss Plaintiff's Title VII claims on the basis of the "personal staff" exemption in Section 2000e(f).

### E.    Punitive and Emotional Distress Damages

Defendants argue that Plaintiff is not entitled to any punitive or emotional distress damages.  Although Plaintiff makes no opposing argument, the Court will nevertheless address the merits of Defendants' arguments here.

Where claims are barred by the Eleventh Amendment, the plaintiff is not entitled to monetary damages.  *See Gies v. Flack*, 495 F. Supp. 2d 854, 861 (S.D. Ohio 2004).  "Monetary damages" include, among other things, punitive and emotional distress damages.  *Id.*  Accordingly, Plaintiff may not recover either punitive or emotional distress damages for any of her claims that are barred by the Eleventh Amendment. *See id.*

For those claims that are not barred by the Eleventh Amendment, Plaintiff should be able to recover punitive or emotional distress damages unless the recovery of those damages is otherwise barred by statutory or common law.  Defendants set forth arguments, which the Court will address below, as to why Plaintiff should not be permitted to recover punitive and emotional distress damages under the FMLA and Title

VII even absent Eleventh Amendment immunity. However, Defendants make no arguments addressing whether Plaintiff may recover punitive or emotional distress damages for those claims brought against Defendants under the ADA, ADEA, or state law that are not barred by Eleventh Amendment immunity. As such, the Court declines to make any ruling here as to Plaintiff's ability to recover those damages under the ADA, ADEA or state law.

Section 2617(a) of the FMLA sets forth the remedies for an employer's violation of the statute. 29 U.S.C. § 2617(a). A number of courts previously have held that a plaintiff cannot recover punitive or emotional distress damages under the FMLA because neither are expressly provided for in Section 2617(a). *See Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1007-08 (6th Cir. 2005) (holding that emotional distress damages are not recoverable under the FMLA); *Johnson v. Honda of Am. Mfg.*, 221 F. Supp. 2d 853, 858 (S.D. Ohio 2002) (recognizing that punitive and emotional distress damages are unavailable under the FMLA); *Rosania v. Taco Bell of Am., Inc.*, 303 F. Supp. 2d 878, 881-82 (N.D. Ohio 2004) (collecting cases); *Cox v. True N. Energy, LLC*, 524 F. Supp. 2d 927, 948 (N.D. Ohio 2007) ("Under the federal FMLA, a plaintiff is not entitled to recover emotional distress damages or punitive damages."); *Gutierrez v. 78th Judicial Dist. Court*, No. 1:07-cv-1268, 2009 U.S. Dist. LEXIS 45215, at *15-16 (W.D. Mich. May 29, 2009) ("Plaintiff is advised that compensatory damages for emotional distress are not available under FMLA . . . nor are punitive damages of any sort.") (internal citations omitted). As Plaintiff has set forth no argument to the contrary, this Court concludes that Plaintiff is barred from recovering punitive or

emotional distress damages from any of the Defendants for her claims brought under the FMLA.

We turn now to Title VII.  Defendants argue that governmental entities, including the State of Ohio, are immune from punitive damages under Title VII.  They make no argument with respect to emotional distress damages.  Section 42 U.S.C. § 1981a provides, in pertinent part:

> (a) Right of recovery.
>
> (1) Civil rights. In an action brought by a complaining party under section 706 or 717 of the Civil Rights Act of 1964 (42 U.S.C. 2000e-5 [or 2000e-16]) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) prohibited under section 703, 704, or 717 of the Act (42 U.S.C. 2000e-2 or 2000e-3 [or 2000e-16]), and provided that the complaining party cannot recover under section 1977 of the Revised Statutes (42 U.S.C. 1981), the complaining party may recover compensatory and punitive damages as allowed in subsection (b) . . . .
>
> (b) Compensatory and punitive damages.
>
> (1) Determination of punitive damages. A complaining party may recover punitive damages under this section against a respondent (other than a government, government agency or political subdivision) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual.

42 USCS § 1981a.  Based on the plain language of this Section, a government, government agency and a political subdivision are all immune from punitive damages for unlawful intentional discrimination.  42 U.S.C. § 1981a; *see also LaBarre v. Memphis Light, Gas & Water Div.*, No. 04-2401 B, 2006 U.S. Dist. LEXIS 11395, at *2 (W.D. Tenn. Feb. 28, 2006) (citing *Poe v. Memphis Light, Gas & Water Div.*, No. 98-5942, 1999 U.S. App. LEXIS 32083, at *3 (6th Cir. Nov. 30, 1999)).  This Section also has

43

been interpreted to apply to officials of those entities who are sued in their official capacities.  *Krawczyk v. Del Re*, 37 F. Supp. 2d 1106 (N.D. Ill. 1999); *see also Will*, 491 U.S. at 71 (recognizing that an individual sued in his official capacity for an entity is considered a suit against the entity itself).  As Plaintiff makes no argument in opposition, this Court concludes that Plaintiff is barred from recovering punitive damages against any of the Defendants under Title VII.

**IV.**    **CONCLUSION**

Based on the foregoing, Defendants' Motion to Dismiss (Doc. 21) is **GRANTED IN PART** and **DENIED IN PART**.  It is hereby **ORDERED** that:

1. as to Hamilton County,

   a. all of Plaintiff's claims in Counts I through VII remain pending; and

   b. Plaintiff is ORDERED to properly serve Hamilton County with summons and the Amended Complaint within 20 days of entry of this Opinion and Order or risk dismissal of all claims against Hamilton County.

2. as to Judge Grady in her official capacity representing the Hamilton County Juvenile Court,

   a. Plaintiff's state law claims in Counts III, V and VII are DISMISSED in their entirety;

   b. Plaintiff's claim in Count I for violation of the family-care provision of the FMLA remains pending in its entirety;

   c. Plaintiff's claim in Count I for retrospective and compensatory relief for violation of the self-care provision of the FMLA is DISMISSED;

d. Plaintiff's claim in Count I for prospective relief for violation of the self-care provision of the FMLA remains pending;

e. Plaintiff's claim in Count II for retrospective and compensatory relief for violation of the ADEA is DISMISSED;

f. Plaintiff's claim in Count II for prospective relief for violation of the ADEA remains pending;

g. Plaintiff's claim in Count IV for retrospective and compensatory relief for violation of the ADA is DISMISSED;

h. Plaintiff's claim in Count IV for prospective relief for violation of the ADA remains pending; and

i. Plaintiff's claim in Count VI for violation of Title VII remains pending in its entirety.

3. as to Superintendent Bowman,

a. all of Plaintiff's claims in Counts I through VII remain pending in their entirety.

4. as to punitive damages and emotional distress damages,

a. Plaintiff may not recover punitive or emotional distress damages for those claims that are barred by the Eleventh Amendment;

b. Plaintiff may not recover punitive or emotional distress damages for her claims against any Defendants in Count I for violation of the FMLA; and

c. Plaintiff may not recover punitive damages for her claims against any Defendants in Count VI for violation of Title VII.

**IT IS SO ORDERED.**

s/ Michael R. Barrett
Michael R. Barrett, Judge
United States District Court